THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONNIE GAIL HEATH, Defendant-Appellant.
Fourth District No. 12552

Opinion filed February 11, 1976.

Summers, Watson & Kimpel, of Champaign, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight, Assistant State's Attorney, and James C. Dedman, Law Student, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The defendant, Ronnie Gail Heath, and a codefendant were indicted for armed robbery occurring on June 6, 1972, at a grocery store in Champaign, and after a jury trial Heath was found guilty and sentenced to serve 5 to 15 years imprisonment. He contends on appeal that the in-court identification of the defendant should have been suppressed and that he was denied the assistance of counsel.

On June 12, 1972, an indictment was returned and at the defendant's request the public defender was appointed to represent him. On June 21, 1972, a discovery motion was filed by his attorney, and on arraignment the defendant plead not guilty. At this time a jury trial was set for July 10, 1972. On July 11, 1972, the public defender asked for a continuance due to his lack of preparation and the court continued the case to July 17, 1972.

On July 18, 1972, defendant's motion to suppress the in-court identification of the defendant was filed, heard and denied. The public defender represented the defendant at the hearing on the motion to suppress, at which the following evidence was presented.

Shortly after the robbery, the description and license plate number of the vehicle used in the robbery were broadcast by police radio. A State police officer about 2 miles from the scene of the robbery observed a vehicle with the suspect license plate number, but with a somewhat different description. The officer stopped the car and arrested the two occupants while the victim of the armed robbery was brought to the scene of the arrest. The two suspects were strapped into the front passenger's seat of two separate police cars when the victim viewed them by walking past the two police vehicles and looking through the windows. The victim identified Heath as the man who had robbed him.

When the trial began on July 19, 1972, both defendants requested that the court continue the case and appoint another attorney to replace the public defender. The motion was denied. The court allowed codefendant Leonard Wolf to discharge the public defender upon waiver of his right to counsel, while defendant Heath continued to be represented by the public defender. Jury selection began with counsel representing the defendant, but after one panel of four jurors had been accepted, the defendant again asked that another attorney be appointed instead of the public defender. This request was denied. Then, defendant asked to have the public defender discharged from the case. The court allowed the defendant to discharge the public defender, but only after admonishing the defendant a number of times regarding his right to be represented by counsel. The court required the public defender to remain inside the bar throughout the trial for possible assistance if requested by the defendant.

During the trial the defendant asked numerous times that another attorney be appointed to represent him. The defendant was given the opportunity to examine the last two panels of jurors but refused to do so. The defendant also refused to cross-examine any of the State's witnesses, presented no evidence, and he did not consult with the public defender at any time. Defendant was found guilty of armed robbery while the codefendant, who, according to the State's evidence had remained in the car during the robbery, was found not guilty.

The denial of defendant's motion to suppress the in-court identification based upon the one-man showup procedure is the first issue before us. A one-man showup to the victim of a crime held immediately after the arrest of a suspect has been approved as proper police procedure. (*People v. Bey* (1972), 51 Ill. 2d 262, 281 N.E.2d 638; *People v. Young* (1970), 46 Ill. 2d 82, 263 N.E.2d 72.) In *Bey*, the suspect was returned to the crime scene immediately after his arrest, which occurred very shortly after the crime. *Young* was unusual in that the victim had not lost sight of the suspects in the few moments between the commission of the offense and the arrest of the suspects by the police. In *Young*, the court said:

> "Even if the proof were otherwise and the officers had taken Mitcham to view the defendants in custody in the police car, we are of the opinion that the principles announced in *Stovall*, *Wade* and *Gilbert* [*Stovall v. Denno* (1967), 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1991; *United States v. Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; and *Gilbert v. California* (1967), 388 U.S. 263, 87 S. Ct. 1651, 18 L. Ed. 2d 1178] would not have been violated. Indeed, in our opinion police officers who failed, in circumstances like these, to determine at once whether or not the victim of the crime could identify the men in custody as the men who had committed the crime, would be subject to criticism. Many decisions of other courts support our conclusion that no rights of the defendants were violated by the identification procedure used in this case." 46 Ill. 2d 82, 87.

*People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, is a case very much like the present case. An armed robbery and shooting occurred in Chicago, and an immediate police dispatch was broadcast which identified the suspect's vehicle as "a small light car containing black occupants." On his way to the crime scene a police officer spotted a car having this description, and gave chase. He stopped the car and arrested its occupants. The court noted that there was probable cause to make this arrest. Regarding the one-man showup which then took place at the arrest scene, the court stated as follows:

"The record indicates that Mrs. Ridesky ran into her apartment after the assailant fled and called the police, giving a description of the car and occupants. Shortly thereafter a police officer arrived to investigate. After getting a description of the offender, the police officer received a radio call that the suspects had been stopped nearby. He then drove Mrs. Ridesky to the scene of the arrest where the identification took place. We find nothing objectionable in this procedure. *People v. Newell,* 48 Ill. 2d 382; *People v. Young,* 46 Ill. 2d 82." 50 Ill. 2d 221, 228.

■■ We believe the one-man identification procedure was proper here because there was probable cause to stop the defendant's vehicle and to make an arrest, which occurred about 15 minutes after the armed robbery. The courts have consistently upheld this sort of identification procedure.

The defendant's next contention has a greater constitutional significance. Was the defendant denied the right to be represented by counsel? A close examination of the record reveals that the defendant initially requested that the public defender be appointed to represent him, and did not object to the public defender until five weeks later. Over that period of time, the defendant was represented in court by the public defender on June 21 at the arraignment when the jury trial was set for July 10, on July 11 at the hearing on the motion for a continuance which was granted for trial to begin on July 17, and on July 18 at a lengthy hearing on the motion to suppress the in-court identification. When the court denied that motion and after a conference with both defendants, the public defender announced he was prepared to go to trial in the morning. On July 19, after jury selection had commenced, the defendant finally objected to the public defender and requested the court to replace the public defender as counsel for the defendant.

When all of the facts are considered there was no error in denying this motion. When the public defender was assigned to the defendant's case on June 12, 1972, the court made the following statement to the defendant:

"THE COURT: I advise you also that you have a right to be represented by an attorney if you wish to obtain counsel of your own choosing, then the Court will give you a reasonable opportunity to do so. If you are indigent and cannot afford counsel, then the Court will appoint counsel without any charge to you. What are your desires in this respect?

MR. HEATH: I would like to have a lawyer appointed for me."

On July 19, when the defendant asked for another continuance for

the purpose of allowing the court to appoint different counsel the public defender explained that he was prepared to go to trial:

> "* * * Between last week and Monday of this week I did almost drop all of my other matters and attempt to prepare myself more adequately for the trial and in that connection did interview personally almost all of the witnesses and the persons in my judgment who were, if not, well, the leading witnesses in the case and inspected the physical evidence and talked on more occasions with my clients since that date of July 11 in regards to the possible defenses and the procedure on this case. * * *
>
> * * *
>
> * * * I did spend some time with them but I must represent that yesterday I did frankly tell them that I thought probably their case was adequately prepared or as at least I was right now as I would be in September. * * *
>
> Well, immediately after their arrest on these charges, they were separately interviewed by law students at the public defender's office. Those law students have made some further brief investigation on the case, but I have done the bulk of the investigation since the court's denial of the general continuance motion on July 11."

Repeated motions were made by defendant to replace the public defender and were denied. Later on July 19, the defendant asked that the public defender be discharged which the court granted but instructed the public defender to remain in court for possible assistance to the defendant. The court explained the ruling as follows:

> "I will state further for the record that this matter was continued once before on the request of counsel, that I know that Mr. Bergstrom is an able lawyer with considerable experience in the practice of criminal cases, that he has had an opportunity to examine this case, investigate it, that he represents to the court that investigators in his office have done so. It was represented to the court that in one way or another that he told you in his professional opinion that further investigation wouldn't alter the outcome of the case."

Under well-settled principles of law the question of a continuance is one addressed to the discretion of the trial court, and we believe the defendant delayed his request for too long a time. In *People v. Mitchell* (1966), 33 Ill. 2d 603, 605, 213 N.E.2d 514, a similar case, the court said, "An indigent defendant should not be allowed to accept the court appointed public defender without objection at arraignment and then arbi-

trarily on the day of trial demand that another court-appointed attorney undertake his defense. [Citation.] While an accused in a criminal case has the constitutional right to be represented by counsel of his choice, such right may not be employed as a weapon to thwart the administration of justice. [Citations.]" ·

■■ Defendant argues that he sought the continuance in order to obtain private counsel, but nothing in the record indicates that defendant had a bona fide expectation of procuring private counsel. Delay in the administration of justice should not be permitted to rest on a speculative basis. (*People v. Solomon* (1962), 24 Ill.2d 586, 182 N.E.2d 736.) Therefore, we find no error in the denial of the motion for continuance.

The defendant also claims that the trial court failed to ascertain that the defendant was making a knowing and intelligent waiver of counsel as required by Supreme Court Rule 401 (Ill. Rev. Stat., ch. 110A, § 401), when he was allowed to discharge the public defender. Defendant had a constitutional right to represent himself, pro se. *Faretta v. California* (1975), 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562; *People v. Smith* (3rd Dist. 1975), 33 Ill. App. 3d 725, 338 N.E.2d 207; *People v. Heidelberg* (3rd Dist. 1975), 33 Ill. App. 3d 574, 338 N.E.2d 56.

In particular, defendant claims the court did not determine that he understood the nature of the charge and the minimum and maximum sentence.

First, we note, but do not decide, that a waiver of counsel may not have occurred since the court required the public defender to remain present and to be available for assisting defendant. See *People v. Lindsey* (1st Dist. 1974), 17 Ill. App. 3d 137, 308 N.E.2d 111.

■■ However, even if a waiver of counsel did occur, we believe, after examining the entire record, that defendant fully understood the charge and the penalties at the time he discharged the public defender. Before the discharge, defendant was present while his counsel discussed the crime charged and the possible sentence, and he heard the indictment read to the prospective jurors. Defendant's exchanges with the trial judge indicated his familiarity with the possible sentence. We believe that any alleged deficiency in the formality of the court's admonitions was harmless. (See *People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559; *People v. Roberts* (3rd Dist. 1975) 27 Ill. App. 3d 489, 326 N.E.2d 116.) We have also considered that defendant had been represented by counsel at four pretrial court proceedings covering a period of 5 weeks. When the defendant asked that the public defender be discharged, the trial court repeatedly and fully advised defendant of his constitutional right to counsel, and ascertained that defendant understood the con-

sequences of his action, and that he nevertheless persisted in his pro se representation.

Considering all the circumstances of this case, we find no reversible error, and conclude that the judgment of the Circuit Court of Champaign County should be and is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.