THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HANAN C. SMITH, Defendant-Appellant.

Second District   Nos. 84—0463, 84—0464 cons.

Opinion filed May 31, 1985.—Rehearing denied July 2, 1985.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Following the revocation of his probation in two Kane County court cases, defendant Hanan C. Smith was sentenced to a term of four years' imprisonment in case No. 83 CF 619 for theft over $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)), and three years' imprisonment in case No. 82 CF 1102 for retail theft of property valued at less than $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3(a)). Defendant's sole contention on appeal is that he did not effectively waive his right to counsel at the sentencing hearing.

On October 20, 1982, defendant was charged in case No. 82 CF 1102 with the offense of retail theft of property valued at less than $300, a Class 4 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3(a).) Defendant pleaded guilty to the charge on January 26, 1983; he waived his right to a presentence investigation and a hearing in aggravation and mitigation. He was thereafter sentenced to 30 days' imprisonment in the Kane County jail and was placed on 12 months' probation.

On July 25, 1983, the State filed a petition to revoke defendant's probation in case No. 82 CF 1102, alleging that on July 5, 1983, the defendant committed the offense of theft of a typewriter valued at more than $300, a Class 3 felony (see Ill. Rev. Stat. 1983, ch. 38, par. 16—1(e)(3)), and attempted theft of another typewriter valued at more than $300, a Class A misdemeanor (see Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)). These same two offenses formed the basis of a two-count indictment filed against the defendant in case No. 83 CF 619. On that date, July 25, 1983, defendant was informed of the nature of the theft and attempted theft charges, the minimum and maximum periods of imprisonment which could be imposed upon conviction of those offenses, and the fact that he had a right to counsel and a preliminary hearing. He was also informed that if his probation in case No. 82 CF 1102 (for retail theft) is revoked, he could be sentenced to a term of imprisonment of not less than one nor more than three years in the Department of Corrections. A public defender was then appointed to represent defendant in both the probation revocation proceeding and in the hearing on the underlying offenses of theft and attempted theft.

On September 23, 1983, defendant entered a negotiated plea of guilty to the theft-over charge in case 83 CF 619, and he was sentenced to a period of 24 months' probation on that charge. The charge of attempted theft in case 83 CF 619 was nol-prossed on motion of the State. Defendant also stipulated to the probation violation in case 82 CF 1102, and was resentenced to 24 months' probation in that

case, the sentence to run concurrently with the probation in 83 CF 619. Prior to accepting defendant's guilty plea and admission of probation violation, defendant was again advised by the court of the nature of the theft-over charge and its minimum and maximum penalties. Additionally, at the end of the hearing, defendant was advised by the court that if he should violate his probation he would be resentenced on the theft charge (in case 83 CF 619) to a two- to five-year term of imprisonment, with a likelihood that the sentence would be more than the minimum.

On March 2, 1984, the State filed petitions to revoke defendant's probations in cases 82 CF 1102 and 83 CF 619. The petitions alleged that on February 11, 1984, defendant committed the offense of retail theft of property having a value of less than $150 (see Ill. Rev. Stat. 1983, ch. 38, par. 16A—3(a)), and that on February 20, 1984, defendant committed the offense of theft of property having a value of less than $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)). Defendant was again appointed counsel to represent him in the probation revocation proceedings.

On April 6, 1984, the cause proceeded to a hearing on the petitions to revoke probations. Following the introduction by the State of several exhibits and the testimony of four witnesses, the court found defendant in violation of his probation in both cases. The cause was then continued for sentencing on May 17, 1984.

On May 7, 1984, defense counsel moved to withdraw as counsel. The motion alleged that the office of the public defender had received a letter from defendant in which defendant charged the public defender with incompetent representation. Following the arguments of counsel at the hearing on the motion to withdraw, defendant was given the choice of either representing himself or of having the public defender continue to represent him at sentencing. The court noted that it could recall nothing during the probation revocation hearing which would indicate that defense counsel did not adequately represent the defendant. The court also stated that the evidence was quite clear that a probation violation had occurred. The following colloquy then occurred:

"[THE COURT]: Mr. Lorek [defense counsel], are you prepared to proceed with this hearing if Mr. Smith elects to continue with you?

THE DEFENDANT: No sir, I definitely do not.

MR. LOREK: No, your Honor, because—

THE COURT: Well, apparently Mr. Lorek isn't prepared to go forward with this hearing this morning.

Is it your choice to represent yourself, Mr. Smith?

THE DEFENDANT: Yes, sir.

THE COURT: Are you prepared to go forward this morning with this hearing?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

The Court will then permit the Public Defender's Office to withdraw."

Defense counsel was then permitted to consult with defendant prior to the sentencing hearing and to give defendant the information which counsel had accumulated on the case.

When the sentencing hearing resumed later that afternoon, the court made the following statements:

"[THE COURT]: Mr. Smith, what I'm going to do is I'm going to direct Mr. Lorek to remain in the courtroom and remain present during the hearing. He's going to be here to be available to you and you can consult with him any time you want about anything you want regarding this sentencing hearing. So that he will be available if you have any questions. If you'll just make me aware of that fact I'll give you the time and the opportunity to stop and talk with him, or for that matter even discuss with him out of the presence of anyone else any questions or problems you may have.

So, do you understand the procedure and how it's going to go, Mr. Smith?

THE DEFENDANT: Yes, sir, I understand what you're saying.

THE COURT: All right. And we'll proceed accordingly."

At the sentencing hearing, the State offered no evidence in aggravation. In mitigation, defendant urged the court to admit him into Hines Veterans' Hospital because he was a veteran and an alcoholic. Defendant also mentioned his age (age 57) and the fact that he was "not criminal in nature, I'm just sick, really, ***." Following these statements, the court asked defendant whether he had "any desire or need to consult with [defense counsel] about anything that's going on, or what's going on, or anything about the procedure at this point." Defendant responded, "No, sir, I don't think so." Defendant was then sentenced to four years' imprisonment in the Department of Corrections on the Class 3 theft (83 CF 619), and three years' imprisonment on the Class 4 offense of retail theft (82 CF 1102), the sentences to run concurrently. Timely notice of appeal followed.

Defendant contends that his rejection of legal representation at

the sentencing hearing did not constitute a valid waiver of his right to counsel because the trial court failed to fully admonish him of the legal implications of his decision, as required by Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)). In response to this argument, the State maintains that the Rule 401(a) admonishments were not required here because defendant had the benefit of standby counsel at sentencing and because the defendant possesses a certain degree of legal sophistication which renders harmless the court's failure to fully admonish him under the rule.

It is elementary that an accused who is charged with an offense punishable by imprisonment has a right to be represented by counsel at all critical stages of the proceedings, including sentencing, unless he knowingly waives that right. (*People v. Morgese* (1981), 94 Ill. App. 3d 638, 418 N.E.2d 1124; *People v. Jones* (1976), 36 Ill. App. 3d 190, 192, 343 N.E.2d 644.) In assessing the validity of a waiver of counsel, a reviewing court must determine whether there was an intelligent relinquishment or abandonment of a known right or a privilege, and more than a routine inquiry is required. (*People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 49, 372 N.E.2d 1014.) Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)) requires the trial court to admonish a defendant in open court before allowing a waiver of a right to counsel. That rule provides, in pertinent part:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." (87 Ill. 2d R. 401(a).)

The purpose of this paragraph is to provide a procedure which will eliminate any doubt that a defendant understands the nature and consequences of the charge against him before a trial court accepts his waiver of the right to counsel and to preclude a defendant from waiving assistance of counsel without full knowledge and understanding. *People v. Derra* (1981), 92 Ill. App. 3d 1106, 1109, 416 N.E.2d 688.

The provisions of Rule 401, unlike those of Rule 402 governing

guilty pleas, make no mention of "substantial compliance." Nevertheless, some courts have held that convictions need not be reversed for failure of a court to give all of the admonitions of Rule 401 in connection with waiver of counsel if it is clear from the record that the defendant was aware of the information sought to be conveyed by the rule. (*People v. Black* (1979), 68 Ill. App. 3d 309, 313, 385 N.E.2d 899; *People v. Jackson* (1978), 59 Ill. App. 3d 1004, 1008-09, 376 N.E.2d 685; *People v. Varnold* (1977), 45 Ill. App. 3d 724, 359 N.E.2d 1135; *People v. Smith* (1975), 33 Ill. App. 3d 725, 338 N.E.2d 207.) In such a case, it is reasoned, the defendant is not prejudiced by the failure of the trial court to give the complete Rule 401(a) admonitions. Further, it has been held that no error occurs where a defendant possesses a degree of legal sophistication, such that he is aware, at least in a general way, of the content of the particular admonition which the trial court failed to articulate. (See *People v. Shaw* (1980), 89 Ill. App. 3d 69, 72, 411 N.E.2d 143.) Recently, in *People v. Montoya* (1981), 94 Ill. App. 3d 6, 9, 418 N.E.2d 84, we noted that the cases discussing "substantial compliance" as it relates to Rule 401(a) actually hinge upon the factual background and circumstances surrounding the defendants' waiver of counsel, rather than opposing theories as between literal and substantial compliance. In any event, we held in *Montoya* that with regard to a waiver of counsel, substantial compliance with Rule 401(a) is not sufficient. 94 Ill. App. 3d 6, 9, 418 N.E.2d 84.

A number of authorities in this State have held that where a defendant proceeds to trial with the "technical assistance" of an attorney, he has not waived counsel. In such a situation, the defendant need not be given the full admonishments of Supreme Court Rule 401(a). (See, *e.g., People v. Nieves* (1982), 92 Ill. 2d 452, 442 N.E.2d 228; *People v. Dorsey* (1982), 109 Ill. App. 3d 218, 440 N.E.2d 394; *People v. McKinney* (1978), 62 Ill. App. 3d 61, 378 N.E.2d 1125; *In re Boswell* (1978), 62 Ill. App. 3d 1033, 379 N.E.2d 658.) The reason for these decisions is that a defendant who seeks to conduct his own defense with the advice of counsel partakes of the freedom of defending himself in addition to the expertise of an advisor with legal training. (*People v. Hite* (1983), 115 Ill. App. 3d 66, 69, 450 N.E.2d 416.) A defendant who wishes to act *pro se* desires to stand alone, but this does not occur if a lawyer assists him at trial. (115 Ill. App. 3d 66, 69, 450 N.E.2d 416.) In this instance, a defendant receiving such legal advice should not be heard to complain on appeal of improprieties pertaining to admonishments about proceeding *pro se* or of deficiencies apparent of record relating to a waiver of legal assistance. 115 Ill. App. 3d 66, 69, 450 N.E.2d 416.

The majority of the cases dealing with standby counsel involved situations where counsel was requested by the defendant himself and played an active role during the proceeding in question. In *People v. Derra* (1981), 92 Ill. App. 3d 1106, 1110, 416 N.E.2d 688, the fourth district appellate court held that Rule 401(a) admonishments were required even though defendant had the benefit of standby counsel, where defendant did not himself request counsel but rather counsel was appointed by the court *sua sponte*, and where counsel was virtually silent during trial. (See also *People v. Brown* (1980), 80 Ill. App. 3d 616, 626-27, 399 N.E.2d 1374; *cf. People v. Hite* (1983), 115 Ill. App. 3d 66, 70, 450 N.E.2d 416.) Defendant in the present case urges this court to follow the holding in *Derra.* However, several cases have also held that Rule 401(a) was inapplicable even though the court *sua sponte* appointed counsel, and even though counsel was apparently silent during the proceeding. (See *People v. Vaughn* (1983), 116 Ill. App. 3d 193, 451 N.E.2d 898; *People v. Pittman* (1979), 75 Ill. App. 3d 683, 394 N.E.2d 702.) In *Vaughn,* the court stated that "[r]equiring a defendant to proceed *pro se* with standby counsel is not a waiver within the meaning of Rule 401(a), and thus the admonitions of the rule were not required when the case proceeded to trial as scheduled." 116 Ill. App. 3d 193, 197, 451 N.E.2d 898.

■ Initially, we must determine whether the defendant's statements to the court at the sentencing hearing constituted an attempted waiver of his right to counsel. A waiver of counsel occurs when a defendant "informs a court that he does not wish counsel; that he wants to stand alone." (*People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140, 308 N.E.2d 111; *People v. McKinney* (1978), 62 Ill. App. 3d 61, 65, 378 N.E.2d 1125.) In the instant case, the public defender filed a motion to withdraw, alleging that defendant had charged him with incompetency. Further, defendant himself filed a motion seeking the withdrawal of his counsel on the basis of a conflict of interest and also for his counsel's failure "to exercise 'right of confrontation, cross-examination and representation by counsel,' on my behalf." The court determined that defendant was not entitled to a new attorney on the basis of these bare allegations and further found that defendant was adequately represented at the probation revocation hearing. This finding has not been challenged on appeal. Nevertheless, we believe that defendant's initial statement to the court that he "definitely [did] not" desire to have the public defender proceed with the hearing and that he chose to represent himself constituted a clear indication of defendant's desire to stand alone and thereby waive counsel. (*People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140, 308 N.E.2d 111.) We

also note that defendant did not request a continuance to obtain another attorney but, to the contrary, stated that he was ready to proceed with the hearing on his own. *Cf. People v. Baker* (1983), 94 Ill. 2d 129, 445 N.E.2d 769.

Nevertheless, there is some question as to the effect of defendant's subsequent acquiescence in the standby counsel procedure initiated by the court when the sentencing hearing resumed. It has been stated that "rejection of legal representation must be unequivocal." (*People v. Voight* (1977), 52 Ill. App. 3d 832, 838, 368 N.E.2d 165.) In the present case, although defendant wished to defend himself, he did not unequivocally reject the legal assistance of his standby counsel. To the contrary, following his initial decision to represent himself, and prior to the sentencing hearing, the record reflects that defendant consulted with his appointed counsel, who gave defendant all the information which he had accumulated on the case. When the sentencing hearing resumed, the court clearly explained the standby counsel procedure, stating that counsel would be available if defendant had any questions. Defendant stated that he understood this procedure. Following defendant's argument on the factors in mitigation, the court inquired whether defendant had "any desire or need to consult with [defense counsel] about anything that's going on *** or anything about the procedure at this point." Defendant responded, "No, sir, I don't think so." We interpret the totality of defendant's comments and conduct as indicating his subsequent agreement to "[partake] of the freedom of defending himself in addition to the expertise of an adviser with legal training." (*People v. Hite* (1983), 115 Ill. App. 3d 66, 69, 450 N.E.2d 416.) We reach this conclusion even though the procedure was initiated by the court, and even though standby counsel was essentially silent during the proceedings. Thus, because we believe that defendant proceeded with the "technical assistance" of an attorney, we conclude that he did not waive the right to counsel within the meaning of Rule 401(a), and strict compliance with that rule was not necessary. *People v. Nieves* (1982), 92 Ill. 2d 452, 466, 442 N.E.2d 228.

Further, our review of the record indicates that defendant was in fact admonished in open court as to the nature of the charges and their minimum and maximum penalties. Regarding the offense of theft-over, defendant was advised on July 25, 1983, and again on September 23, 1983, that he could receive a sentence of not less than two nor more than five years. He was also advised that in the event of a probation violation on the theft offense, the sentence would likely be more than the minimum. In fact, defendant was sentenced to a term

of four years' imprisonment for this offense. Additionally, with respect to the offense of retail theft (82 CF 1102), defendant was advised on July 25, 1983, that a term of imprisonment of not less than one nor more than three years could be imposed if defendant violated his probation for that offense. He was ultimately sentenced to three years' imprisonment. For each of these offenses, defendant indicated he understood the minimum and maximum penalties which could be imposed. Thus, it is clear that defendant was in fact advised of the minimum and maximum penalties, contrary to defendant's assertion on appeal.

■ Defendant also argues that he was not properly admonished that he had a right to counsel which included the right to obtain private counsel in lieu of the public defender. We note that defendant does not claim he was not aware that he had a right to appointed counsel; in fact, it was appointed counsel that defendant sought to dismiss from the case. It also is not argued that defendant was entitled to have another attorney appointed to represent him. Defendant's argument regarding the right to counsel is only that he should have been apprised of his right to obtain private counsel if he could afford one. A comparable argument was considered and rejected in *People v. Fitzpatrick* (1984), 124 Ill. App. 3d 1079, 1081-82, 465 N.E.2d 166. In that case, the defendant argued that the court should have informed him about the possibility of alternative counsel's being appointed. The court held that Rule 401(a) does not require such an admonition, and further, that defendant did not request counsel other than the public defender. (124 Ill. App. 3d 1079, 1081-82, 465 N.E.2d 166.) Similarly, in the instant case, Rule 401(a) does not require the court to advise an indigent defendant that he has a right to retain counsel if he is dissatisfied with the public defender. It merely requires a defendant to be informed that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court. Defendant was so informed in the instant case on July 23, 1983, and in fact had the benefit of counsel throughout the entire proceedings until the sentencing hearing. Further, at the sentencing hearing, defendant did not request another attorney. Under these circumstances, we believe the requirement of Rule 401(a) that defendant be advised of his right to counsel was fully satisfied.

■ Finally, we note that the record affirmatively demonstrates aggravating factors sufficient to justify the sentences imposed by the trial court. The court recited, in general terms, the factors upon which it relied in arriving at the sentences. The mitigating factors noted by defendant at the sentencing hearing (his age, nonviolent

criminal history, alcohol addiction, and veteran's status) were specifically commented on by the court prior to imposing sentence. In light of defendant's significant history of adult criminal activity, which included numerous convictions for theft, burglary, and petty larceny, as well as defendant's several probation violations, it is evident that representation by an attorney would have made little, if any, difference in the outcome of the hearing. In fact, defendant was warned that another probation violation would result in a sentence greater than the minimum. Under these circumstances, it cannot be said that the sentence was the result of defendant's decision to proceed *pro se*.

For all these reasons, we affirm the judgments of the circuit court of Kane County.

Affirmed.

NASH, P.J., and STROUSE, J., concur.